## TOWN OF EAST LYME *v.* NEW ENGLAND NATIONAL, LLC, ET AL.
### (AC 21807)

Lavery, C. J., and Bishop and Hennessy, Js.

Argued January 8—officially released May 14, 2002

*Brian B. Staines*, with whom, on the brief, was *Lee N. Johnson*, for the appellant (named defendant).

*Charles C. Anderson*, for the appellee (plaintiff).

BISHOP, J. In this action to foreclose two municipal tax liens, the defendant New England National, LLC,[1] appeals from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, the town of East Lyme. The defendant claims that the court improperly rejected three of its special defenses alleging that (1) the defendant made payments sufficient to discharge its outstanding tax obligation for the years 1993 and 1994, (2) the plaintiff violated 12 U.S.C. § 1825 (b) by filing a certificate to continue a tax lien on property in which the Federal Deposit Insurance Corporation (FDIC) held an interest and (3) the plaintiff filed the tax liens in violation of the automatic stay provisions of the Bankruptcy Code. We affirm the judgment of the trial court.

The court set forth the following undisputed facts in its memorandum of decision dated November 9, 2000. "On July 25, 1989, CCNE Group Limited Partnership purchased the subject property, located at 16 Mostowy Road in East Lyme. On September 20, 1989, CCNE mortgaged the property to Suffield Bank, with guarantees by Kenneth Schwartz and Leonard Ginsberg. On May 22, 1991, Suffield Bank commenced a mortgage foreclosure action against CCNE and the guarantors. While the mortgage foreclosure action was pending, the FDIC, in its capacity as receiver for Suffield Bank, was substituted as the plaintiff. One of the guarantors, Kenneth Schwartz, filed for chapter 7 bankruptcy on May 10, 1993. On January 28, 1994, the other guarantor, Leonard Ginsberg, became the subject of an involuntary chapter 7 bankruptcy action. On August 8, 1995, the FDIC assigned the note and mortgage to Drum Rock, Inc.,

---

[1] The other defendant in this matter, Mark Canno, filed a disclosure of no defense on September 4, 1998, and is not a party to this appeal. We therefore refer in this opinion to the defendant New England National, LLC, as the defendant.

which in turn assigned the note and mortgage to Robert Blatt, trustee, by deed dated August 16, 1995. Blatt, trustee, was thereafter substituted as the plaintiff in the mortgage foreclosure action. Title to the property vested in Blatt, trustee, by virtue of a certificate of foreclosure dated November 27, 1995, and recorded November 28, 1995. On April 1, 1998, Blatt, trustee, conveyed the property by quitclaim deed to [the defendant] . . . .

"The present action was filed on August 18, 1998. The plaintiff seeks to foreclose two tax liens on the property. The two liens arose from the tax lists of October 1, 1993, and October 1, 1994, respectively. Certificates continuing the two tax liens were filed on May 10, 1995, and May 21, 1996, respectively. The defendant or its predecessors in interest made various payments on the outstanding taxes on the property.[2] A March 7, 1996 payment in the amount of $45,558.78 was applied to the outstanding taxes, interest and charges from the 1989 and 1990 lists. A September 16, 1997 payment in the amount of $37,500 was applied to the outstanding taxes, interest and charges from the 1990 and 1991 lists. A February 27, 1998 payment in the amount of $50,000 was applied to the outstanding taxes, interest and charges from the 1991 and 1992 lists. Finally, a May 1, 1998 payment in the amount of $20,000 was applied to the outstanding taxes, interest and charges from the 1992 list and to a portion of the interest arising from the 1993 list. According to the plaintiff's affidavit of debt, there is still a total of $92,611.16 owing on the taxes, interest and fees arising from the 1993 and 1994 lists."

The defendant posited six special defenses, all of which the court rejected. The court concluded that the

[2] That finding is contrary to the parties' stipulation in which it was stated that the defendant was the party that made the four payments on outstanding taxes in the years 1996, 1997 and 1998.

tax liens arising from the 1993 and 1994 assessments were valid and rendered a judgment of foreclosure by sale for the plaintiff. The defendant now appeals, claiming that the court ruled improperly on the first, fifth and sixth special defenses.

"The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 565, 775 A.2d 284 (2001). The facts in the present case are undisputed. The scope of our review is, therefore, plenary.

## I

The defendant first claims that the court improperly rejected its sixth special defense, which alleged that the defendant had discharged its tax obligations for the years 1993 and 1994. The defendant claims that the court improperly found that payments it made were correctly applied to outstanding taxes assessed in the years 1989 to 1992 rather than to outstanding taxes assessed in the years 1993 and 1994. We decline to review this claim.

Paragraphs four and five of the first and second counts of the plaintiff's complaint alleged that the plaintiff properly filed and caused to be recorded in the land records a certificate of lien for taxes with interest, fees and charges thereon for the years 1993 and 1994, and that no part of those taxes had been paid. The defendant denied in part the plaintiff's allegations and pleaded in its sixth special defense that the "[d]efendant made

payments of taxes which when properly applied discharge any tax obligation plead by plaintiff."

To resolve the defendant's claim, we first must review the record to determine whether the evidence demonstrates that the defendant made payments in an amount sufficient to discharge the outstanding tax obligation on the property. Only then may we make a legal determination as to whether the defendant's payments were correctly applied. Because of inconsistencies and ambiguities in the record, we are not able to make either assessment.

It is the appellant's responsibility to provide an adequate record for review. Practice Book § 60-5. "The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. . . ." Practice Book § 61-10. "Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did . . . . An appellant's utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . .

"Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Citations omitted; internal quotation marks omitted.) *Bradley* v. *Randall*, 63 Conn. App. 92, 95–96, 772 A.2d 722 (2001).

The record in the present case is ambiguous. In its findings of fact, the court determined that title to the

property had vested in Blatt, the defendant's predecessor in interest, by virtue of a certificate of foreclosure dated November 27, 1995, and recorded November 28, 1995, and that Blatt had conveyed the property by quitclaim deed to the defendant on April 1, 1998. The court also stated that "[t]he defendant or its predecessors in interest" had made four separate payments in the years 1996, 1997 and 1998 that were applied to outstanding taxes, interest and charges from the 1989, 1990, 1991, 1992 and 1993 lists. Notwithstanding the parties' stipulation that the defendant had made all four payments, the court itself did not determine which, if any, payments were made by Blatt and which were made by the defendant. Although it might seem logical to conclude that the only payment made by the defendant was the May 1, 1998 payment of $20,000 after it took title to the property, there is no evidence in the record suggesting this was the case. Furthermore, the defendant in its brief makes the conflicting assertions that (1) "[p]ayments made by . . . Blatt . . . were applied to lists prior to the 1994" list and (2) all four payments were tendered by the defendant.

The defendant could have completed the record and eliminated the inherent ambiguity in the court's findings of fact by way of a motion for articulation, but failed to do so. Accordingly, "[w]e . . . are left to surmise or speculate as to the existence of [the] factual predicate for the trial court's rulings." (Internal quotation marks omitted.) Id., 96. In light of the inadequate record before us, we decline to review this claim.

## II

The defendant next claims that the court improperly rejected its fifth special defense, which alleged that the plaintiff had violated 12 U.S.C. § 1825 (b) (2) by filing a certificate to continue the tax lien for the 1993 taxes

while the FDIC held a mortgage interest in the property as the receiver of Suffield Bank. We disagree.

Subsection (b) (2) of 12 U.S.C. § 1825 provides that "[n]o property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any involuntary lien attach to the property of the [FDIC]." In a recent case, *37 Huntington Street, H, LLC* v. *Hartford,* 62 Conn. App. 586, 772 A.2d 633, cert. denied, 256 Conn. 914, 772 A.2d 1127 (2001), we held that the prohibition in 12 U.S.C. § 1825 (b) (2) against the attachment of municipal tax liens on property owned by the FDIC does not bar tax liens against property owned by a private entity where, as here, the FDIC's property interest is that of a mortgagee rather than a fee holder. Id., 596. The defendant conceded at oral argument that *37 Huntington Street, H, LLC,* is controlling with respect to this claim.[3] In this regard, the defendant is correct. The claim must, therefore, fail.

### III

The defendant finally claims that the court improperly rejected its first special defense, which alleged that the tax assessment and the filing of and attempted collection of the plaintiff's tax liens violated the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362 (a), because Schwartz, one of the two guarantors, had commenced a bankruptcy action before the liens were filed. We do not agree.

Practice Book § 10-70 (b) provides in relevant part: "When [a municipal tax lien] has been continued by certificate, the production in court of the certificate of lien, or a certified copy thereof, shall be prima facie

---

[3] When this court queried the defendant's counsel at oral argument as to whether the defendant agreed that *37 Huntington Street, H, LLC,* is binding in view of our Supreme Court's denial of the plaintiff's petition for certification for appeal in that case, counsel responded that "[i]t appears so."

evidence that all requirements of law for the assessment and collection of the tax or assessment secured by it, and for the making and filing of the certificate, have been duly and properly complied with. Any claimed informality, irregularity or invalidity . . . in the lien filed, shall be matter of affirmative defense to be alleged and proved by the defendant." Accordingly, the filing of the first special defense was proper.

The court rejected the first special defense on the ground that (1) the defendant offered no evidence showing that any property of the guarantors was subject to the tax liens at issue, (2) the defendant cited no case law for the proposition that a tax lien may not be filed against property subject to a mortgage when the mortgage guarantor has filed for bankruptcy, (3) the bankruptcy debtor did not have an ownership interest in the property and (4) the filing of the certificate to continue the tax lien did not constitute enforcement of a judgment.

Subdivision (4) of 11 U.S.C. § 362 (a) provides that an automatic stay is applicable to "any act to create, perfect, or enforce any lien against property of the estate . . . ." We agree with the court that because the guarantor did not have an ownership interest in the subject property and because the filing of the certificates did not constitute enforcement of a judgment,[4] the automatic stay provision of 11 U.S.C. § 362 (a) did not invalidate the liens.

Furthermore, we have found no legal authority for the proposition that a tax lien may not be continued against property subject to a mortgage when the mortgage guarantor has filed for bankruptcy. The defendant relies on two cases to support this claim, *In re St. Amant*, 41 B.R. 156 (Bankr. D. Conn. 1984), and *First Constitution Bank* v. *Flanders*, Superior Court, judicial

---

[4] The plaintiff did not begin its action to foreclose the liens until 1998.

district of New Haven, Docket No. 910310164 (March 22, 1995) (14 Conn. L. Rptr. 218). In *In re St. Amant*, the United States Bankruptcy Court for the District of Connecticut concluded, pursuant to 11 U.S.C. § 362 (a), that the filing of a bankruptcy action following a judgment of strict foreclosure stayed the running of the law day. *In re St. Amant*, supra, 157. In *Flanders*, the Superior Court held that 11 U.S.C. § 362 (a) stayed the enforcement of a judgment obtained against the guarantor before the commencement of the bankruptcy action. *First Constitution Bank* v. *Flanders*, supra, 218. Both cases can be distinguished from the present case, however, because the fundamental issue in those cases was whether the filing of a bankruptcy action following a judgment of strict foreclosure stays the passing of the law day or enforcement of the judgment, whereas here the issue is whether the filing of a bankruptcy action stays the subsequent filing of a certificate to continue a tax lien in the *absence* of a judgment of strict foreclosure.

Moreover, the debtor in *In re St. Amant* was the owner of the subject property, not a guarantor; *In re St. Amant*, supra, 41 B.R. 157; and the Bankruptcy Court later refused to apply the *In re St. Amant* holding to guarantors because "[u]nlike the present case, the property subject to foreclosure in [*In re St. Amant*] was unquestionably owned by the debtor and therefore part of his estate . . . ." *Federal Deposit Insurance Corp.* v. *Howard Shoreline Associates*, 183 B.R. 33, 36 (Bankr. D. Conn. 1995). The *Howard Shoreline Associates* court expressly concluded that a guarantor's "derivative interest in the property does *not* constitute a specific, personal interest which makes it part of his estate."[5] (Emphasis added.) Id.

---

[5] We recognize that *Flanders* expanded the principle adopted in *In re St. Amant* and applied it to guarantors, but we decline to apply that principle here because the present case, unlike *Flanders*, does not involve a judgment of strict foreclosure, and we are not required to follow the decision of a lower court. *McDonald* v. *Rowe*, 43 Conn. App. 39, 43, 682 A.2d 542 (1996).

The case law thus fails to support the defendant's claim that the automatic stay provisions of the Bankruptcy Code prevent the filing of a tax lien against property subject to a mortgage where a mortgage guarantor has filed for bankruptcy. Accordingly, the court properly rejected the defendant's first special defense.

The judgment is affirmed.

In this opinion the other judges concurred.

Furthermore, the Bankruptcy Code is federal law, and "we look to the federal courts for guidance in resolving issues of federal law." *Turner* v. *Frowein*, 253 Conn. 312, 340, 752 A.2d 955 (2000).